**ST. PAUL FIRE AND MARINE INSURANCE CO., a corp., Third Party Plaintiff-Appellee and Judg. Creditor,**

v.

**H. Ray COX, Third Party Defendant-Appellant and Judg. Debtor,**

**Alabama City Bank of Gadsden, Garnishee & Plaintiff in Interpleader-Appellee,**

**D.E. Locklear, Defendant in Interpleader-Appellee.**

**No. 84–7294**

**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Feb. 4, 1985.

Michael L. Roberts, Floyd, Keener & Cusimano, Gadsden, Ala., for third party defendant-appellant and judg. debtor.

George Ford, Gadsden, Ala., for third party plaintiff-appellee and judg. creditor.

Before JOHNSON and HATCHETT, Circuit Judges, and LYNNE *, District Judge.

PER CURIAM:

This is an appeal from an opinion and judgment of the District Court of Alabama, 583 F.Supp. 1221, permitting third-party plaintiff (appellee) St. Paul Fire and Marine Insurance Co. to garnish funds in a pension and profit sharing plan held in the name of defendant (appellant) H. Ray Cox, by garnishee Alabama City Bank of Gadsden. Because we agree with the district court that Congress did not intend the non-alienation provision of ERISA to create a windfall for employees who engage in criminal acts at the expense of their employers, we affirm.

## I. THE FACTS

On August 12, 1977, H. Ray Cox, President of the Alabama City Bank of Gadsden, was convicted of willfully and knowingly misapplying bank funds, with the intent to injure and defraud the bank in violation of 18 U.S.C.A. § 656. The bank subsequently filed with its surety, St. Paul, a proof of loss statement covering transactions handled by Cox. As part of the agreement between the insurer and the insured bank, St. Paul paid to the bank $152,000, and the bank assigned to St. Paul all rights that it had against any person or persons responsible for the losses. On June 16, 1980, St. Paul obtained a judgment against Cox for the amount of the loss incurred. Following that judgment, St. Paul instituted a garnishment proceeding against the vested interest of Cox in the pension and profit sharing plan of Alabama City Bank of Gadsden. Because a claim against the same funds had been made by another party, who stated that Cox's interest in the plan had been assigned to him as a "guarantee" for certain equipment and realty leases executed between them, the bank instituted an interpleader action in the amount of the monies payable to Cox under the pension and profit sharing plan.

The district court held that the non-alienability provisions of both ERISA (29 U.S.C.A. § 1056(d)(1)) and the pension fund in question (Article IX, Section 16) precluded the assignment of plan funds to the individual claimant. The court concluded, however, that in light of the congressional objectives embodied in ERISA and the equitable principle that a wrongdoer should not profit by his misdeeds, neither these non-alienability provisions nor the non-forfeiture provision included in ERISA (29 U.S.C.A. § 1053(a)) precluded the garnishment of plan funds by St. Paul. In accordance with this opinion, the court directed the trustee of the fund to disburse to the clerk of the court all plan funds which had accrued to Cox's account, and ordered further that future payments from the fund which may come due should be disbursed directly to St. Paul, until such time as the entire judgment, plus accrued interest, is satisfied. From that part of the opinion and order permitting garnishment of his interest in the pension plan, Cox appeals.

## II. ERISA AND THE GARNISHMENT OF PENSION PLAN FUNDS

Cox argues that the same non-alienability and non-forfeiture provisions which prevent the assignment of plan funds to an individual claimant also prevent the garnishment of plan funds by St. Paul. While "[t]he federal cases have construed ERISA's provision against assignment or alienation as prohibiting garnishments generally," *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980),[1] the courts have also recognized the existence of certain "implied exceptions" to the relevant ERISA provisions. This court, for example, has permitted garnishment of pension plan

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

**1.** We will analyze appellant's claim under the non-alienation provisions of ERISA, not only because of the possibility raised by appellee that an action under which funds are disbursed to a third party rather than returned to the general pool does not constitute a forfeiture, but because most previous judicial analyses of garnishment have proceeded under the non-alienation provisions. *See Bowen v. Bowen, supra, American Telephone & Telegraph v. Merry, supra; Cartledge v. Miller, supra.*

funds to satisfy alimony obligations. *See Bowen v. Bowen,* 715 F.2d 559 (11th Cir. 1983). *See also American Telephone & Telegraph v. Merry,* 592 F.2d 118 (2d Cir. 1979); *Cartledge v. Miller,* 457 F.Supp. 1146 (S.D.N.Y.1978). Courts have also permitted garnishment to satisfy child support commitments. *See Senco of Florida, Inc. v. Clark,* 473 F.Supp. 902 (M.D.Fla.1979); *Ward v. Ward,* 164 N.J.Super. 354, 396 A.2d 365 (1978). Of prime importance to the courts in considering implied exceptions to the non-alienation provisions have been the congressional objectives behind ERISA, and the effect of the proposed exceptions on those goals. *See American Telephone & Telegraph v. Merry, supra,* 592 F.2d at 120–25; *Cartledge v. Miller, supra,* 457 F.Supp. 1154–56.

ERISA was established to protect "the continued well-being and security of millions of employees and their dependents" by providing "minimum standards ... assuring the equitable character of [pension fund] plans and their financial soundness." 29 U.S.C.A. § 1001(a). These standards are intended to protect the employee against mismanagement or the provision of misinformation by the employer. The legislation provides no indication whatsoever that it is intended to protect the employee against the consequences of his own mis-

deeds. The judgment under which St. Paul, as subrogee of the bank, brings this garnishment proceeding arose from the criminal mishandling of bank funds by Cox. Cox's offense was not simply an act of disloyalty; it was a felony perpetrated against his employer.[2] The insulation of an employee from liability for the consequences of his criminal misconduct does not protect the financial interests of other employees or promote security in the workplace. On the contrary, in such cases garnishment of the employee's fund interest best serves the financial stability of the employer and, indirectly, the employer's pension plan. There is no reason to conclude that ERISA requires the abrogation of the equitable principle that a wrongdoer should not benefit from his misdeeds.[3] The district court did not err in holding that garnishment undertaken to satisfy liabilities arising from criminal misconduct toward an employer constitutes an exception to the non-alienability provisions of ERISA.

AFFIRMED.

**2.** While some courts have suggested that ERISA was intended to override the "bad boy" forfeiture provisions in many pension plans which required denial of benefits where the employee had engaged in *dishonest* or *disloyal* behavior, *see e.g., Fremont v. McGraw-Edison,* 606 F.2d 752 (7th Cir.1979); *Winer v. Edison Bros. Stores Pension Plan,* 593 F.2d 307 (8th Cir.1979), it is not clear that courts have applied a consistent distinction between dishonest or disloyal actions and criminal conduct in determining whether an employee may receive accrued pension benefits. *Compare Vink v. SHV North American Holding Corp.,* 549 F.Supp. 268 (S.D. N.Y.1982) (ERISA precludes denial of benefits despite criminal behavior) *and Helmsley-Spear, Inc. v. Winter,* 74 A.D.2d 195, 426 N.Y.S.2d 778 (1st Dept.1980) (same) *with National Bank of North America v. International Brotherhood of Electrical Workers,* 69 A.D.2d 679, 419 N.Y.S.2d 127 (N.Y.Sup.Ct.), *appeal dismissed,* 48 N.Y.2d 752, 422 N.Y.S.2d 666, 397 N.E.2d 1333 (Ct.App. 1979) (ERISA permits denial of benefits to employee guilty of non-criminal misconduct). But

the fact that the appellant (defendant) in this case was convicted of criminal conduct militates more strongly in favor of the application of the equitable principle that a wrongdoer should not profit from his misdeeds.

**3.** Appellant also points to ERISA's preemption provision, 29 U.S.C.A. § 1144(c)(1), which states that the statute is intended to preempt "all laws, decisions, rules, regulations or other State action having the effect of law ...." but most courts have concluded that Congress intended to preempt only those state laws relating directly to employee benefit plans. *See e.g., American Telephone & Telegraph v. Merry, supra,* 592 F.2d at 121 (ERISA does not preempt state laws concerning availability of garnishment orders); *Stone v. Stone,* 450 F.Supp. 919 (N.D.Cal.1978), *aff'd,* 632 F.2d 740 (9th Cir.1980), *cert. denied,* 435 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981) (same). Thus we conclude that ERISA does not preclude the application of equitable principles such as the one which serves as the basis for the implied exception here.